May it please the court, Kevin Rehbrand on behalf of the appellant Harvey Gainey. As this court is well aware, the district court in this case ruled that the agreement that was the subject of a guaranteed dispute between the parties was unambiguous, that Mr. Gainey is an individual, unambiguously guaranteed amounts that were owed by the corporation with which he was affiliated, Super Service Incorporated. However, the district court clearly erred in ruling that there was an unambiguous contract, pardon me if I misspoke, in ruling that it was unambiguous. The contract, the agreement, the guarantee was very clearly ambiguous and when the court looks at the other evidence that was in the ruling. Is your point on this score to get to parole evidence? Is that your idea that if we can show some ambiguity in this text we can then get to other indicators of meaning? Is that your way of thinking about this case? Yes, Your Honor. Exactly. And the ambiguity that we would highlight, Your Honor, is focused on the word now, as the court knows, and ambiguity is anything, any word that is equally susceptible to more than one meaning. And in the context of this guarantee, the word now is very clearly subject to more than one meaning in this case. To begin... I agree with that in the abstract. Maybe, I'm actually not even 100% sure, but I'll grant it to you that now by itself might have a couple different meanings, but isn't the context of now or at any time hereafter? Yes. Okay. I agree with that, Your Honor. So when you put it like that, it sounds like it's... I would have said that's covering the waterfront, is what I would have said. I understand, Your Honor. And to be honest, there is some very broad language throughout that agreement that I think easily distracts from the focus on the very words that you just focused on. It says any obligations owed now and or at any time thereafter. And the focus is on a transaction that occurred five years earlier. In other words... I realize that. Okay. And so, Your Honor... It's owed now. The focus on now means becoming due now through this transaction. That's what the interpretation of the word clearly can be. In fact, the dictionary definition that we cited in our brief defines now and gives an example. It's saying at the present time or moment. And that's the context of this word in this guarantee. There's a... Why wasn't it owed at the present time? It became owing at the present time by executing the 10-document transaction that took place on that date in 2005. It was a tractor deal. The deal that the appellee is trying to claim the guarantee applies to is a 2000, five years earlier, trailer deal, completely unrelated as the witnesses from GECC admitted at trial. The documents in the transaction were not related in any way financially or substantively in terms of tractors and trailers. And so this owing is the money in the tractor deal. That's the context of the agreement. And in fact, the undisputed testimony at trial is that the GE representatives told Mr. Ganey that was how the guarantee was interpreted. That it applied to the tractor deal and stuff moving forward. Nothing previously. And so the context of that phrase, and it's used twice in the guarantee, is what's becoming due now through this transaction is being guaranteed. And anything that comes hereafter. And that's something that Mr. Ganey understood. And in fact, if you look at the documents from GECC itself... It sure is broad or any other type of sum of any kind whatsoever. And then at that point you want to shorthand owe to you now or any time hereafter is just to be whenever. I mean, that's what it seems to be shorthand for, whenever. In the past, the present, the future. Your Honor, I don't think that it's shorthand for whenever, as I understand the argument, for the past. Because it doesn't say that. It's their document. It's their form. It's to be interpreted against them. They're the drafters of the document. And clearly, I admit that's very broad in saying any kind of transaction. I understand that. But it doesn't get as broad when it talks about the time frame. It's not categorical with the past. It's categorical with what we're executing now, what's becoming due now in this tractor deal, and anything that comes forward. We understood that. Mr. Ganey agreed to that. That's where the ambiguity comes in. In fact, the individual guarantee would be interpreted as saying you are now incurring this obligation. That's what you're guaranteeing. And anything that comes hereafter. Anything. We accept that. And of course, all of the testimony is consistent with that. If you look at Exhibit 22 at trial, that is their internal financing document that explained their rationale for agreeing to this loan. And it separates the guarantee of Mr. Ganey as applying to the tractor deal that was then being analyzed from existing obligations, which were identified completely separately in the memo and were cross-collateralized by other documents. And if you read the context of Exhibit 22, they would not have separated the two had they believed and understood at the time that the Ganey guarantee applied to previous transactions too. They didn't think it did. And the language leaves it open to that very clearly. In fact, they're identifying the guarantee as the linchpin financial backing of the tractor transaction in 2005. They had an obligation to identify any other special conditions. It's right there in the document in Exhibit 22. And they didn't identify that the guarantee was so, quote-unquote, watered down by the fact that it may be used to apply to a previous transaction. And they would have had to do that because otherwise it misrepresents the strength of the guarantee as financial. What should they have said? You said they're the drafter. How should they have done this? They should have spelled out previous obligation. May it owe to you in the past. May it owe to you now. May it owe to you any time hereafter. Yes. But in the past, how could something that happened yesterday and creates a debt not be due today? Well, Your Honor, I think... Is that always true? Yes. I think, Your Honor, if something in the past creates a debt... Yeah. It was due then and it's also due today. As long as it's until it's been paid. And if the paperwork says it's due, it's due. Yes. So that means it's due now. Well, Your Honor, I don't think in the context of now in the sentences we just highlighted, that's what it means. I think the now in that context means becoming due now through this paperwork. That's the way it's read. That's the way it's intended. So yes, I understand that a previous obligation is due, but that's not what this language covered. And that's clearly open to interpretation in every single bit of parole evidence at trial. Their own witness, their own documents, Mr. Ganey's undisputed testimony, which the district court found to be truthful, said that that's not how we intended the deal and that's not what we meant by the deal. That's not what the words meant to us. The words meant we're guaranteeing this transaction and everything forward. That's where the focus was. So if I could, I'd like to jump to damages because I feel like that's the second point that's worth focusing on with a limited oral argument at the time that I have. First of all, before you do that, this was tried before Judge Maloney. Yes, sir. So all this parole evidence came in before the judge? Yes. So he heard it all and then he rules as a matter of law that the guarantee is not ambiguous. Yes. Your remedy is what, to send it back to Maloney and have him listen to it again? I mean, obviously, he's already heard your side of the story and he's found it so clear that he doesn't even have to make a factual finding. He makes a legal finding and if he had made a factual finding, you wouldn't have a ground to stand on, would you? Well, I understand that he made the legal finding. I acknowledge that was his ruling. We are arguing also, of course, that the factual findings that are related there too are clearly erroneous. But I agree with you, Your Honor. Judge Maloney... I don't know what you're going to get here if we remand it to him. It seems to me like he would make the same ruling on the factual basis rather than the legal basis. Oh, I respectfully disagree. Disagree? Why? Yeah, very, very much. Because he found Mr. Gainey's testimony to be truthful. If you read the context of the... Well, even though Mr. Gaines may have believed it, you know, he should have been represented by counsel and counsel should have looked at this and if that's really what he intended, his attorney shouldn't have had him sign it. So his subjective intent, I don't think, is determinative as to the legal issue of what this means, that's all. Well, Your Honor, if there's any ambiguity, it is. And I should say, in addition to his intent, his understanding at the time and GECC's understanding at the time, they told him that that's how the deal was structured in their minds and that's how they viewed the deal, that the guarantee applied only to the tractor deal and going forward. And that's undisputed in the record. So, to answer your question, Your Honor, I think the remedy is to reverse and say that there is no guarantee, I mean, it does not apply to the 2,000 trailer transaction because all parole evidence... So you would have us rule as a matter of law, it doesn't apply? I would, Your Honor, that's our first request. All right, so, well, that argument goes to it's not ambiguous. You're arguing that it's unambiguous and therefore we should rule as a matter of law. That's contrary to what you've been arguing? No, with parole evidence and extrinsic evidence considered, it becomes unambiguous. The proofs become unambiguous, that it does not apply to the 2,000 trailer transaction. The parole evidence points only one way. There is not a shred and the brief argued by appellee does not bring any evidence that would contradict that. Alternatively, we'd ask the court to remand it so that Judge Maloney could view all the parole evidence in the context of the understanding that this is not an unambiguous guarantee and I need to look at parole evidence and let him, as a factual finder, rule however he rules on what the guarantee means in light of the parole evidence. All right, I see you're latest on. Thank you. Good morning, may it please the court. My name's Rob Kamenak. I'm here on behalf of General Electric. Counsel's argument regarding the scope and breadth of the guarantee does not jive with the language actually provided in the guarantee. Counsel is trying to divorce the word now from the context. The phrase, as pointed out by Judge Sutton, has to be read in the context of the words around it. It talks of, and it's defined by way of scope, payment of money to the customer that is owed now. It's the payment of the money owed that defines the scope. Now means whatever money is owing at that time. So again, the guarantee reads... Why don't they spell, I mean, they could have spelled that out. They spell everything else out, right? I mean, principal, interest, rent, late charges, indemnities, blah, blah, blah. I mean, it's just classic. And they don't do it there. No, but they didn't have to do it, Your Honor, because they didn't need to modify it more narrow because it was meant to apply broadly. It was meant to apply... No, but there's no risk in saying any debts previously incurred, anything due now and anything due hereafter. I mean, I'm not sure what risk there would be with that. There's no risk. Okay. So why didn't they do it? They do it elsewhere. Because they didn't need to do it. I'm not trying to be trite with the court. The fact of the matter is the language uses the language of the guarantee, talks in terms of any, now, terms that are commonly understood. All the court would have to do, all the parties would have to do is look at what payment was owing as of that date, and that would be it. In other words, could you make it more clear? Arguably. Did you need to? No. And that's our position in a nutshell. I don't, I think what counsel's been arguing is you have to look at now and somehow graft onto the notion that the words becoming due should be inferred on that phrase. And the difficulty with his arguments, the word becoming due or reference to the earlier note, it doesn't appear anywhere in here. And that's a difficulty. I think Judge Maloney actually found this the right way. I think it is a question of law on this particular point for the court. I think the contract's unambiguous for the reasons that he stated. If the court... Is counsel correct that if we decided that had some ambiguity, this exchange with Judge Griffin, I take it he's right, there potentially would be something for Judge Maloney to do on remand? In other words, he didn't really factor in the parole evidence in his ruling? No, I think he found that the parole evidence was merged into the terms of the contract. Now, that may get you to the same result, I don't know, but that's technically what he found. He also, if I may, Your Honor, he also found that Mr. Gainey's testimony was quote, it's page six of his opinion, quote, truthfully asserted, he didn't find it was right. And so all we're saying, he was sincere with respect to his testimony. That's all Judge Maloney found with respect to that. He didn't commit perjury. Well, correct. And I'll give him the benefit of the doubt one step farther, Your Honor, that he was sincere in his belief, but his belief doesn't necessarily govern. And Judge Maloney also found, and I think the record shows this, that Mr. Gainey was a fairly sophisticated person, had been around the block in these sort of things. We're not talking about somebody where there's an adhesion contract. And you know from the opinion Judge Maloney mentioned, I think at least twice, maybe three times, there's no claim of misrepresentation or fraud here. So this is an arm's length dealing type contract situation. The court saw it as a matter of law. The court, I think, properly interpreted. I don't know, and I didn't hear here today, how counsel gets around the Cohen brief, Cohen case in the Michigan Court of Appeals. It seems to be on all fours. As a matter of fact, I think our language is even better. In Cohen, Judge Sutton, the obligation, which was the guarantee, was actually limited to a particular note. I acknowledge that. You'll find that in that opinion. Ours is one step broader. Ambiguity doesn't necessarily go away for lack of specificity. And that's the use of the English language in this. I have other things I can talk about, but I think the damages are clearly erroneous, standard. I think we've briefed it to the tees. Unless the court has questions on damages, I would just ask the court to affirm. The damages are not clearly erroneous. I'm sorry, Your Honor. The standard is clearly erroneous. Correct. Okay, I don't have anything further. No, thank you. Thank you, Your Honors. You can give your rebuttal now. Well, you can also talk about damages. I know you didn't have time to talk about it in your original argument, but you think that's important, even though it's not really rebuttal, but go ahead. Thank you, Your Honor. This case involved all documents presented by GE. And the only witness they had at trial that knew anything about the documents was the person in charge of the litigation group who testified that they selected the lawyers and supervised them for the trial. That person had no first hand knowledge of a single document that was admitted into evidence. And so the argument about damages goes to the weight of those documents. Rules 602 and 701 say a witness who does not have personal knowledge of the documents cannot present credible testimony. And that's what happened here. If you look at the brief and it's cited therein, their witness admitted they had no personal knowledge of the documents. They were bringing them from a pile in the room and presented them in the courtroom and admitted specifically they could not document or affirm the accuracy of any of the damages documents. In fact, the damages documents were summary documents that added numbers from different source documents. We didn't even have the source documents. But further, if you accept the documents being what they are, GE's own documents show that the entire obligation they're claiming under the Superservice lease was paid in full. Paid in full. Exhibit D, their own internal accounting document, said that as of September 30, 2006, the amount owed on the debt was $269,000. From that date forward, GE admits that for two years, until October 2008, Superservice made every obligation of $24,000 a month. In so doing, they paid exactly the amount of $269,000 within a year. And after that, they paid what was identified as a buyout amount. The contract provides that after the lease payments are made, and independent of those lease payments, Superservice can buy out the whole thing for $602,000, 30% of the original cost. From halfway through that two-year period, in other words, from September 2007 through 2008, Superservice paid enough to pay off that obligation when you add the $306,000 that GECC recovered when they took the trailers and sold them. So our payments over two years, their recovery of the trailers adds up to more than what they're claiming was due. If you look at Exhibit D, it documents that amount. Further, if you look at Exhibit 22, their document, it identifies that there were lease amendments that came after the deal closed. Those lease amendments all contradicted each other. Each of them identified a separate amount as the original cost, without explanation. The only thing that's unambiguous about the documents is the amount owed as of September 2006, and the amount that we paid to pay it off in full after that period of time. Their documents say one amount is due in the first lease amendment, another amount is due in the second lease amendment, and a third amount is due in the third lease amendment. Take all three amounts. What we paid from September 2006 through October 2008, plus the $306,000 in recovery that they got when they confiscated the trailers and sold them, paid more than all three of those numbers. At the very minimum, their documents contradict themselves and identify different amounts as due and owing. And when a litigation assistant comes and takes a pile of documents that don't have the source documents, but are merely summaries of numbers purportedly there, and comes to court and says, yes, this is what's due and owing, and cannot explain that flow of payments from September 2006 through October 2008, and then the recovery of the trailers, you have a plaintiff who has failed to carry its burden of proof on damages. We paid for everything. They were asked at trial, the testimony is documented in our briefs that they admitted they could not identify the accuracy. They admitted that Exhibit D properly identified the amount due as of September 2006. So they've admitted in testimony that these documents tell the story that they tell if you look at our numbers. And by their own numbers, we pay the entire matter in full. Therefore, your honors, there's really no dispute that they did not carry their burden of proof with respect to damages. And we ask the court to reverse this ruling and to enter an award of no damages on both leases, but in particular the super service lease, because of these amounts paid in full. In the alternative, we ask the court to remand it to Judge Maloney to consider the evidence already presented and evaluate the damages numbers on his own and reach a ruling based on the fact findings that he comes up with, with the evidence in the record. For those reasons, your honor, we ask the court to reverse and remand. Okay. Thank you for your arguments to both of you and for your briefs. We appreciate it. The case will be submitted and the clerk may call the next case.